# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:23-CV-61744-DAMIAN/AUGUSTIN-BIRCH

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      **Plaintiff,**

**v.**

ENTERPRISE LEASING
COMPANY OF FLORIDA, LLC,

      **Defendant.**

_____/

### ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL AND GRANTING IN PART, DENYING IN PART, AND RESERVING IN PART PLAINTIFF'S MOTION TO COMPEL COMPLETE RESPONSES TO FIRST REQUEST FOR PRODUCTION

This cause comes before the Court on four Motions to Compel. Defendant Enterprise Leasing Company of Florida, LLC's ("Enterprise") Motion to Compel Plaintiff Equal Employment Opportunity Commission's ("EEOC") Statistical Analysis is briefed at docket entries 45, 54, and 57. Enterprise's Motion to Compel Conciliation-Related Documents is briefed at docket entries 46, 56, and 58. Enterprise's Motion to Compel Claimant Information is briefed at docket entries 51, 55, and 59. The EEOC's Motion to Compel Complete Responses to First Request for Production is briefed at docket entries 65, 73, and 74. In addition, the EEOC filed a Declaration of EEOC Chair Charlotte A. Burrows at docket entry 60-1 and filed exhibits under seal for *in camera* review at docket entry 71. Enterprise filed a Notice of Clarification at docket entry 82. The Court held a hearing on Enterprise's three Motions to Compel on February 28 and held a hearing on the EEOC's Motion to Compel on March 15. The Court held both hearings via video teleconference. The Court has carefully considered the parties' submissions, the arguments

that counsel made during the hearings, and the record and is otherwise fully advised in the premises.  For the reasons set forth below, Enterprise's Motions to Compel [DE 45, 46, and 51] are denied, and the EEOC's Motion to Compel [DE 65] is granted in part, denied in part, and reserved in part.

## I.    Background

The EEOC brings this case under the Age Discrimination in Employment Act of 1967 ("ADEA"), contending that Enterprise intentionally fails to hire individuals for management trainee positions based on an individual's age.  DE 1 ¶ 1.  The EEOC alleges that Enterprise "intentionally under-hires applicants protected by the ADEA for management trainee positions based on their age" and that "[a]pplicants age 40 and older are selected at a much lower rate than applicants under 40 and the difference is statistically significant."  *Id.* ¶ 17.  As two examples of statistically significant under-hiring, the EEOC alleges that (1) in August 2019, only 2.3% of Enterprise's management trainees were age 40 or older; and (2) in October 2020, only 1.8% of Enterprise's management trainees were age 40 or older.  *Id.* ¶¶ 18–19.  Among the relief that the EEOC seeks are a permanent injunction precluding Enterprise from discriminating in any employment practice on the basis of age and an award of wages and liquidated damages for the individuals Enterprise purportedly discriminated against.  *Id.* at 5–6.

## II.    Enterprise's Motion to Compel Statistical Analysis [DE 45]

Through several interrogatories and requests for production of documents, Enterprise seeks information about the statistical analysis that the EEOC performed using Enterprise's applicant data that resulted in the EEOC concluding that Enterprise discriminates in hiring based on age. The EEOC objects to producing that information based on the deliberative process privilege, and the EEOC logged the relevant documents in a privilege log.  *See* DE 45-2.  Enterprise asks the Court to overrule the EEOC's objections and to compel the EEOC to produce the information.

As an initial matter, Enterprise maintains that the EEOC waived its assertions of privilege by failing to timely serve a privilege log.  DE 45 at 3.

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  "Unless the parties agree on a different time or the Court orders otherwise, the privilege log . . . shall be served no later than fourteen (14) days following service of . . . any interrogatory response or document production from which some information or documents are withheld on the basis of such privilege or protection . . . ."  Southern District of Florida Local Rule 26.1(e)(2)(D).  While a court may deem an assertion of privilege waived if a party fails to timely serve a privilege log, a finding of waiver is a "harsh sanction."  *Henderson v. Holiday CVS, L.L.C.*, No. 09-80909-CIV, 2010 WL 11505169, at *1 (S.D. Fla. Sept. 24, 2010) (refusing to find waiver when the defendants submitted their privilege log late, but the plaintiffs suffered no prejudice).

The EEOC served its responses that asserted privilege on January 12 and served its privilege log on February 1, meaning that the privilege log was six days (four business days) late.  *See* DE 45-1 and -2.  The privilege log is substantial insofar as it contains 678 item numbers.  DE 45-2.  Further, Enterprise does not contend that it suffered any prejudice due to the privilege log being a few days late.  Under these facts, the Court will not deem the EEOC's assertions of privilege waived.

The Court now turns to the merits of the EEOC's assertions of the deliberative process privilege.  "To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and

deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citation and quotation marks omitted) ("To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure."). "The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004).

The deliberative process privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268. "A 'predecisional' document is one prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Moye*, 376 F.3d at 1277; *see also U.S. Fish & Wildlife Serv.*, 592 U.S. at 269 (stating that documents "are 'predecisional' if they were generated before the agency's final decision on the matter"). "A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions." *Moye*, 376 F.3d at 1278; *see also U.S. Fish & Wildlife Serv.*, 592 U.S. at 269 (stating that documents "are 'deliberative' if they were prepared to help the agency formulate its position").

Enterprise argues that the statistical analysis is no longer "predecisional" because the EEOC adopted the statistical analysis as its policy or position by charging Enterprise with discrimination and filing this lawsuit. DE 45 at 2. Enterprise cites no authority for a proposition that information a government agency considers in deciding to file a lawsuit is no longer

privileged.  Caselaw in fact supports the opposite proposition: that information a government agency considers in deciding to file a lawsuit can be privileged.  *E.g., United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (concluding that documents clearly were part of the deliberative process that led the Department of Justice to sue and were privileged).  Enterprise's unsupported argument does not persuade the Court that the EEOC's statistical analysis is not predecisional.

The deliberative process privilege "requires different treatment for material reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other."  *Fla. House of Representatives v. U.S. Dep't of Com.*, 961 F.2d 941, 947 (11th Cir. 1992) (quotation marks omitted) (stating that the privilege focuses on documents reflecting advisory opinions and acknowledging that "the task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing").  Enterprise asserts that the EEOC already conceded when briefing a motion to dismiss, and that the Honorable William P. Dimitrouleas, United States District Court Judge, already held when ruling on the motion to dismiss, that the statistical analysis is factual rather than opinion.  DE 45 at 2.  Enterprise misstates the record.  The EEOC stated when briefing the motion to dismiss that the Complaint contains "the factual allegation that applicants 40 and older are selected at a lower rate than applicants under 40," and this factual allegation is based on statistical analysis.  DE 22 at 13 & n.11 (emphasis omitted).  The EEOC did not contend that the statistical analysis itself is factual.  Judge Dimitrouleas stated that the Complaint's factual allegations include "that applicants age 40 and older are selected at a much lower rate than applicants under 40 and the difference is statistically significant."  DE 26 at 7–8.  Judge Dimitrouleas did not rule that the statistical analysis itself is factual.

In order to evaluate the EEOC's privilege assertions, the Court ordered the EEOC to file under seal the purportedly privileged documents, and the EEOC complied.  DE 63; DE 71.  The Court has conducted a careful and thorough *in camera* review of those documents.  The Court concludes that all of the documents are privileged.  Without revealing the content of the documents, they consist of internal emails and email chains (rows 2–3, 5–9, 16–33, and 65–69), internal memoranda (rows 4, 104, 106–08, and 129–31), internally created spreadsheets and other documents that reflect the individuals that the EEOC chose to include to conduct its analysis (rows 10–13, 34–57, 110–11, 115–16, 119–20, and 122–28), and miscellaneous other documents that reflect the EEOC's analysis and opinions (rows 109 and 112–13).[1]  All of these documents reflect the EEOC's deliberations, decisions, opinions, and recommendations in the context of evaluating whether to initiate this lawsuit.

"The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality."  *Farley*, 11 F.3d at 1389; *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need.").  A determination as to need is made flexibly on a case-by-case basis, balancing the competing interests and taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees.  *In re Sealed Case*, 121 F.3d at 737–38.

Enterprise contends that it "has a substantial interest in understanding the analysis and assumptions underpinning the ADEA claim" the EEOC raised against it.  DE 45 at 3.  The EEOC states that "it will not rely on the in-house statistical analysis from its consulting expert in proving

---

[1] These row numbers correspond with those in the version of the privilege log filed at docket entry 60-2, which contains cross-references to the item numbers appearing in the version of the privilege log filed at docket entry 45-2.

its claims; rather, EEOC's testifying expert will conduct a new analysis with new data produced by Enterprise during litigation." DE 54 at 4. Given the EEOC's representation that it will not use the pre-suit statistical analysis to prove its case, the Court concludes that Enterprise does not have a particularized need for the documents at issue that outweighs the EEOC's need for confidentiality. However, should the EEOC rely on the pre-suit statistical analysis despite its representation that it will not do so, Enterprise may move the Court to reevaluate its ruling and compel a greater production of information. Enterprise's Motion to Compel the EEOC's Statistical Analysis is denied.

### III. Enterprise's Motion to Compel Conciliation-Related Documents [DE 46]

Before instituting an action under the ADEA, the EEOC "shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b). Through an interrogatory and several requests for production of documents, Enterprise seeks information about the parties' pre-suit conciliation process. The EEOC objects to producing the conciliation information on the basis that it contains confidential settlement discussions.[2] Enterprise asks the Court to overrule the EEOC's objections and to compel the EEOC to produce the conciliation information.

The EEOC relies on Federal Rule of Evidence 408 to support its objections. Under Rule 408, evidence of "furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim" and "conduct or a statement made during compromise negotiations about the claim" is

---

[2] The EEOC also objects to producing certain conciliation information on the bases of the deliberative process privilege and the attorney-client privilege. Enterprise does not address those privileges in the Motion to Compel.

inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Rule 408 speaks of the admissibility of evidence. Enterprise correctly points out that information may be discoverable even if it is not admissible. *See* Fed. R. Civ. P. 26(b)(1) ("Information within [the] scope of discovery need not be admissible in evidence to be discoverable.").

However, evidence must be relevant to be discoverable.[3] *Id.* ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Enterprise maintains that the conciliation information is relevant to its affirmative defenses that challenges the sufficiency of the parties' conciliation process. DE 46 at 3 ("Enterprise has asserted a defense that EEOC's conciliation efforts were insufficient."); DE 58 at 2 ("Enterprise asserts that EEOC inadequately conciliated in this case, and it is entitled to discover documents that bear on that defense."); *see* DE 43 at 7 (pleading an affirmative defense that the "EEOC failed to comply with the statutory prerequisites to suit, including its duty to conciliate").

To meet the statutory requirement to conciliate, the EEOC "must tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 488 (2015). "Judicial review of those requirements (and nothing else) ensures that the [EEOC] complies with the statute." *Id.* at 494 (describing judicial review of whether the EEOC met the conciliation requirement as being "relatively barebones"); *see also id.* at 483 ("We hold that a court may review whether the EEOC satisfied its

---

[3] Enterprise asserts that the EEOC has not objected to producing the conciliation information on the basis of relevance. DE 46 at 3. But the EEOC has objected that the conciliation information contains confidential settlement discussions. Rule 408 limits the ability to use settlement-related evidence, and thus the EEOC's objections put the relevance of such evidence at issue.

statutory obligation to attempt conciliation before filing suit.  But we find that the scope of that review is narrow, thus recognizing the EEOC's extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case.").

The Court cannot comprehend how Enterprise, being the party with whom the EEOC conciliated, would not already have in its own possession the information showing whether the EEOC met the basic requirements of conciliation.  Thus, the Court sees no need to compel the EEOC to produce any conciliation information.  *See E.E.O.C. v. Tex. Roadhouse, Inc.*, No. CIV.A. 11-11732, 2014 WL 4471521, at *5 (D. Mass. Sept. 9, 2014) ("As to the topic of conciliation, the Court assumes that defendants, since they were participants in any attempt to conciliate the charge, have all the factual documents and information to which they are entitled."); *E.E.O.C. v. Evans Fruit Co.*, No. CV-10-3033, 2012 WL 442025, at *3 (E.D. Wash. Feb. 10, 2012) ("It is also noted that Defendant, as the focus of the investigation and a participant in the conciliation process, must be largely aware of what the EEOC did and did not do in these respects.").

Enterprise maintains that the conciliation information may be relevant for some purpose other than to show the sufficiency of the conciliation process, such as to show "the factual basis for EEOC's belief that Enterprise engaged in age discrimination and what relief [the EEOC] may pursue."  DE 46 at 3.  Enterprise may obtain that information through other means such as discovery requests and deposition questions that directly ask for the factual basis for the EEOC's discrimination claim and for the relief it is pursuing.  *See Evans Fruit Co.*, 2012 WL 442025, at *3 ("Defendant has had, and still has, sufficient opportunity to discover the facts underlying the EEOC's Title VII claims by conducting its own investigation and deposing the individual charging parties and class members.  The details of the EEOC's investigative and conciliation efforts are not essential to Defendant's understanding and defense of the Title VII claims.").  Enterprise's Motion to Compel Conciliation-Related Documents is denied.

## IV.     Enterprise's Motion to Compel Claimant Information [DE 51]

Through an interrogatory and several requests for production of documents, Enterprise seeks information concerning the EEOC's communications with the claimants and potential claimants in this case—the job applicants Enterprise purportedly did not hire based on their age. The EEOC objects to producing that information based on the attorney-client privilege and work product protection.  Enterprise asks the Court to overrule the EEOC's objections and to compel the EEOC to produce the information.  The parties' primary disagreement is over whether an attorney-client relationship exists between the EEOC and the claimants and potential claimants.

"Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of [the ADEA]."  29 U.S.C. § 626(c)(1).  However, "the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under [the ADEA]."  *Id.*

"The distinctive enforcement scheme of the ADEA shows unmistakenly that the EEOC has representative responsibilities when it initiates litigation to enforce an employee's rights." *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 494 (3d Cir. 1990) (evaluating for the purpose of applying res judicata whether the EEOC represents individuals in an ADEA lawsuit).

> Congress would not have crafted this enforcement scheme—on the one hand, creating an individual cause of action and, on the other, cutting off the individual's right to sue once the EEOC begins its action—unless Congress intended for the EEOC to serve as the individual's representative when it seeks to enforce that individual's rights.

*Id.* at 494–95 ("If Congress did not believe that the individual's claim would be adequately pressed by the EEOC, it would surely have preserved the individual's right to bring suit either during or after the EEOC suit.").

Several courts have held that, when the EEOC brings an ADEA enforcement action, the relationship between the EEOC and the claimants is akin to an attorney-client relationship. *See E.E.O.C. v. Johnson & Higgins, Inc.*, No. 93 CIV. 5481, 1998 WL 778369, at *4–5 (S.D.N.Y. Nov. 6, 1998) (stating that "[t]he attorney-client privilege can cover communications between EEOC counsel and the employees upon whose behalf it sues" and holding that the attorney-client privilege applied to certain documents and communications between the EEOC and ADEA claimants); *E.E.O.C. v. Nebco Evans Distrib., Inc.*, No. 8:CV96-00644, 1997 WL 416423, at *4 (D. Neb. June 9, 1997) ("[T]he Court is satisfied that the EEOC is serving as the applicants' representative because it has filed suit for individual relief on their behalf and thereby cut off the applicants' private right of action for that relief.  Because of the representative relationship, informal interviews by the defendant with an applicant without the prior consent of counsel for the EEOC would violate Nebraska's ethical rules [prohibiting communication with a represented party]."); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 461–62 (N.D. Ill. 1990) ("While there does not appear to be any formal attorney-client relationship, the EEOC, through its attorneys, are essentially acting as *de facto* counsel for the employees.  There is no sound reason why employers in such cases should have available the protection of the attorney-client privilege whereas employees would not.  Communications between the EEOC attorneys and the employees represented in ADEA cases brought by the EEOC are privileged." (citation omitted)).  The Court finds the reasoning of these cases persuasive.

Enterprise cites caselaw to support its position that there is no attorney-client relationship between the EEOC and the claimants and potential claimants.  The cases on which Enterprise relies are distinguishable or are otherwise unpersuasive.

Enterprise cites various cases brought under laws other than the ADEA, such as discrimination cases brought under Title VII of the Civil Rights Act of 1964. *See Serrano v. Cintas*

*Corp.*, No. 04-40132, 2010 WL 746430 (E.D. Mich. Mar. 2, 2010) (Title VII case); *U.S. E.E.O.C. v. ABM Indus. Inc.*, 261 F.R.D. 503 (E.D. Cal. 2009) (Title VII case); *E.E.O.C. v. CRST Van Expedited, Inc.*, No. C07-0095, 2009 WL 136025 (N.D. Iowa Jan. 20, 2009) (Title VII case); *E.E.O.C. v. Collegeville/Imagineering Ent.*, No. CV-05-3033, 2007 WL 158735 (D. Ariz. Jan. 17, 2007) (Title VII case); *E.E.O.C. v. Albertson's Inc.*, No. 06-CV-01273, 2006 WL 8460350 (D. Colo. Oct. 4, 2006) (Title VII case).  Cases brought under laws other than the ADEA are distinguishable because those other laws do not have the same "distinctive enforcement scheme" as does the ADEA—the termination of an individual's right to sue once the EEOC brings an ADEA enforcement action.  *See U.S. Steel Corp.*, 921 F.2d at 494 & n.4 (explaining that "[t]he enforcement scheme of Title VII of the Civil Rights Act of 1964, from which the framers of the ADEA consciously departed, has no similar feature" (citation omitted)); *Nebco*, 1997 WL 416423, at *4 ("Unlike the Title VII enforcement provisions, under the ADEA, the right of an individual to bring a private action 'shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.'" (quoting 29 U.S.C. § 626(c)(1))); *see also E.E.O.C. v. SVT, LLC*, 297 F.R.D. 336, 341–42 (N.D. Ind. 2014) (case brought under Title VII contrasting ADEA caselaw because, "in a Title VII case brought under § 2000e–5(f), the right of the individual to bring a private action does not terminate with an EEOC lawsuit, and, thus, the relationship between the EEOC and potential class members is not the same as in an ADEA case").  It is this termination of an individual's right to sue under the ADEA that shows that the EEOC serves as the individual's representative.  *U.S. Steel Corp.*, 921 F.2d at 494–95; *Bauman*, 136 F.R.D. at 461–62.  The cases brought under laws other than the ADEA are not persuasive to show that no attorney-client relationship exists.

Enterprise also cites to *Gorman v. Brown-Forman Corp.*, an ADEA case in which a court ruled that the EEOC did not have an attorney-client relationship with claimants.  133 F.R.D. 50,

52–53 (M.D. Fla. 1990) (leaving open the possibility that an attorney-client relationship could exist if a particular claimant expressly asserted a desire to have the EEOC's counsel render confidential legal advice). In so ruling, the court relied on Title VII cases, stating that "the only cases found which touch on the issue hold that with regard to individuals named in the complaint, the EEOC is not in an attorney-client relationship with the aggrieved employee." *Id.* at 52 (citing two Title VII cases). The court found "no reason to treat enforcement actions brought by the EEOC under the Age Discrimination in Employment Act (ADEA) any differently than the sex discrimination actions cited above with regard to whether the EEOC acts as legal counsel for aggrieved individuals in an enforcement action." *Id.* at 53 (reasoning that "[b]oth Title VII and the ADEA provide for EEOC enforcement actions in addition to individual suits brought in the employee's own behalf or for others similarly situated"). The court did not address the fact that the EEOC's initiation of an ADEA enforcement action terminates an individual's right to sue, a distinctive feature not found under Title VII. As already stated, it is this feature that demonstrates the existence of an attorney-client relationship. The caselaw that supports the existence of an attorney-client relationship is better reasoned than *Gorman*.

Enterprise also cites two additional ADEA cases that could support a proposition that no attorney-client relationship exists, however both cases also relied on non-ADEA caselaw to reach their rulings. *See U.S. E.E.O.C. v. Republic Servs., Inc.*, No. 204CV-01352, 2007 WL 465446, at *2 (D. Nev. Feb. 8, 2007) (citing cases brought under Title VII and the Americans with Disabilities Act to support a proposition that individuals must take an affirmative step to enter into a relationship with the EEOC for an attorney-client relationship to exist); *E.E.O.C. v. McDonnell Douglas Corp.*, 948 F. Supp. 54, 55 (E.D. Mo. 1996) (citing a Title VII case for the proposition that the EEOC does not sue in a representative capacity). As these cases likewise did not address

the fact that the EEOC's initiation of an ADEA enforcement action terminates an individual's right to sue, the Court does not find them persuasive.

Enterprise argues that, even if an attorney-client relationship can exist between the EEOC and an ADEA claimant, it does not exist before the claimant agrees to EEOC representation. DE 51 at 1.  However, an ADEA claimant does not agree, consent, or otherwise opt-in to EEOC representation.  *E.E.O.C. v. City of Chi.*, No. 85 C 8327, 1987 WL 15388, at *2 (N.D. Ill. Aug. 3, 1987) ("In a suit brought by the EEOC to enforce the ADEA, the individual claimants need not consent to be joined as party plaintiffs or to be represented by the EEOC."); *E.E.O.C. v. Chrysler Corp.*, No. 81-72347, 1982 WL 406, at *3 (E.D. Mich. Sept. 3, 1982) (holding that, "in a suit brought by the EEOC to enforce the ADEA, the individual claimants need not consent to be joined as party plaintiffs in this suit or to be represented by the EEOC").  The existence of an attorney-client relationship does not depend on whether an ADEA claimant agrees to representation.

Enterprise also argues that, even if an attorney-client relationship can exist between the EEOC and an ADEA claimant, it ceases to exist if the claimant "decline[s] to participate" in the ADEA enforcement action.  DE 51 at 2.  In *E.E.O.C. v. Johnson & Higgins, Inc.*, ADEA claimants initially opposed an EEOC enforcement action before switching sides to support the EEOC.  1998 WL 778369, at *1.  In evaluating whether certain documents and communications were privileged, the court ruled that the attorney-client privilege did not apply while the claimants opposed the EEOC, but the privilege did apply after the claimants joined the side of the EEOC.  *Id.* at *5–6 (reviewing affidavits from the claimants that reflected when each claimant considered EEOC counsel to be his attorney).

Here, neither party has presented the Court with any claimant who "declined to participate" in this lawsuit, if such a claimant exists.  The Court is uncertain whether Enterprise's use of the

14

phrase "declined to participate" refers to merely failing to respond to an EEOC communication, outright opposition to the EEOC's lawsuit such as in *Johnson*, or something in between. Absent knowledge of specific facts relating to a particular claimant, the Court will not compel the EEOC to produce its communications with claimants who may have "declined to participate."

The Court concludes that the attorney-client privilege applies to the EEOC's communications with the claimants and potential claimants in this lawsuit. Neither party has presented the Court with facts from which to conclude that the attorney-client relationship ended or that the attorney-client privilege was waived with respect to a particular claimant.

Finally, Enterprise asks the Court to compel the EEOC to produce facts it gathered from the claimants, as the attorney-client privilege does not protect facts. DE 51 at 3; *see Slep-Tone Ent. Corp. v. Johnson*, 518 F. App'x 815, 821 (11th Cir. 2013) ("The attorney-client privilege, however, protects only disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." (quotation marks omitted)). However, Enterprise has not identified the "facts" it would have the EEOC produce short of the entire content of communications with claimants. The Court notes that the interrogatory that Enterprise cites as being at issue, Interrogatory No. 11, asked the EEOC to provide the "substance" of its communications with claimants. DE 51-1 at 9. Further, the EEOC has agreed to identify all claimants and to provide a brief description of their knowledge relevant to this case. DE 61-1 at 1–2. The Court will not compel a greater production of information. Enterprise's Motion to Compel Claimant Information is denied.

### V.    The EEOC's Motion to Compel Complete Responses [DE 65]

The EEOC breaks its Motion to Compel into five topics, and the Court addresses each topic in turn.

**A. Documents Within Enterprise's Control Regarding Enterprise Holdings**

Under the first topic in the EEOC's Motion to Compel, the EEOC seeks to compel Enterprise to fully respond to Request for Production Nos. 6–7, 9, 11, 20–21, 28, and 36–39. The parties' primary dispute under this topic is Enterprise's discovery obligation to produce documents within its possession, custody, and control. This dispute arises through Enterprise's objection to the following definitional paragraph in the EEOC's Requests for Production:

> B.      "You", "your" or "Defendant" means Enterprise Leasing Company of Florida, LLC ("Enterprise"), its past and present employees, supervisors, and managers, as well as its agents, administrators, subsidiaries, affiliates, corporate parents, successors, officers, directors, consultants, representatives, attorneys, and any other person acting or purporting to act on its behalf or under its control.

DE 65-1 at 3. Enterprise objected to this definition as follows:

> 1.      Enterprise objects to the definition of "You," "your," and "Defendant" to the extent it purports to include any corporate entity other than Enterprise Leasing Company of Florida, LLC or its employees. Enterprise will produce documents only in its own possession, custody, or control. Enterprise further objects to the definition of "You," "your," and "Defendant" to the extent it purports to seek documents, including attorney work product, in the possession, custody, or control of outside counsel.

DE 65-2 at 2.

A party may serve on another party a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample [certain] items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Whether documents are in a [party's] control under Rule 34 is broadly construed." *Costa v. Kerzner Int'l Resorts*, *Inc.*, 277 F.R.D. 468,

470 (S.D. Fla. 2011). Control includes "the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *see also Costa*, 227 F.R.D. at 471 (explaining that control "does not require that a party have legal ownership or actual physical possession of the documents at issue; indeed, documents have been considered to be under a party's control (for discovery purposes) when that party has the right, authority, or practical ability to obtain the materials sought on demand" (quotation marks omitted)).

Enterprise Holdings, Inc. ("EHI") is Enterprise's parent company and is not a party to this lawsuit. However, if the EEOC's Requests for Production seek documents from EHI or any other individual or entity and those documents are within Enterprise's possession, custody, or control as those terms are defined under the law, Enterprise must produce them unless it raised a valid objection.[4] To the extent that Enterprise objects to producing documents that are outside of its possession, custody, or control as those terms are defined under the law, Enterprise's objections are sustained.

In its response to the EEOC's Motion to Compel, Enterprise objects to producing certain EHI documents on the bases of relevancy and disproportionality. DE 73 at 1. But Enterprise did not object on those bases in its responses to the EEOC's Requests for Production. Consequently, Enterprise waived those objections. *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."); Southern District of Florida Local Rule 26.1(e)(2)(A) ("Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.").

---

[4] Enterprise does not argue that EHI documents are not within Enterprise's possession, custody, or control as those terms are defined under the law.

For completeness, the Court will address Enterprise's remaining objections in its responses to the Requests for Production that are at issue (Request for Production Nos. 6–7, 9, 11, 20–21, 28, and 36–39).  Enterprise does not object to Request for Production Nos. 6–7 and 9.  DE 65-2 at 8–9.

Enterprise objects to Request for Production Nos. 11, 20–21, and 38–39 based on overbreadth and/or disproportionality because the requests "seek[] 'all' responsive documents." *Id.* at 10, 14–15, 22–23.  These objections are overruled because they lack any specificity.  *See* Fed. R. Civ. P. 34(b)(2)(B) (requiring the grounds for objections to be stated with specificity); Southern District of Florida Local Rule 26.1(e)(2)(A) (same).  Similarly, Enterprise's objection that Request for Production No. 21 is "potentially overbroad" is overruled for lacking any specificity.  DE 65-2 at 15.

Enterprise makes vagueness and ambiguity objections to Request for Production Nos. 20–21 and 36–37.  *Id.* at 14–15, 21–22.  During the March 15 hearing, Enterprise admitted that it did not comply with the Order Setting Discovery Procedures before it made these objections. *See* DE 38 at 4 (Order Setting Discovery Procedures requiring, "If a party believes that a request or a term is vague, that party shall attempt to obtain clarification from opposing counsel prior to objecting on the ground of vagueness.").  Further, Enterprise stated during the hearing that it is not withholding any documents on the bases of vagueness and ambiguity.  Enterprise's vagueness and ambiguity objections are overruled.

Enterprise objects to Request for Production No. 20 based on the attorney-client privilege and work product protection.  DE 65-2 at 14.  Responsive documents for which Enterprise claims a privilege or work product protection must be logged in a privilege log that complies with the Federal Rules of Civil Procedure and the Local Rules.  *See* Fed. R. Civ. P. 26(b)(5)(A); Southern

District of Florida Local Rule 26.1(e)(2)(B).  The Court will not rule on these objections at this juncture, as the Court has not reviewed the purportedly privileged and protected documents.

Enterprise objects to Request for Production Nos. 28 and 38–39 based on relevance, overbreadth, and disproportionality because they seek recruiting and hiring documentation that is not limited to recruiting and hiring management trainees.  DE 65-2 at 17, 22–23.  These objections are sustained insofar as the Court narrows Request for Production No. 28 to seek "All documentation related to recruiting management trainees according to the university recruitment strategy . . . ."  The Court narrows Request for Production No. 38 to seek "All documents . . . regarding recruiting, hiring, maintaining, or supervising athletes for management trainee positions."  The Court narrows Request for Production No. 39 to seek "All documents . . . regarding recruiting, hiring, maintaining, or supervising Baby Boomers, Millennials, Generation Y or Gen Y, Generation Z, or Gen Alpha for management trainee positions."

Finally, Enterprise objects to Request for Production Nos. 36–37 based on relevance, overbreadth, and disproportionality because they seek "training materials not reasonably related to the claim of age discrimination."  *Id.* at 21–22.  As Request for Production Nos. 36–37 are tailored to training management trainees, Enterprise's objections are overruled.

### B.  Applicant Data for Individuals who Self-Selected Out

Under the second topic in its Motion to Compel, the EEOC seeks to compel Enterprise to respond to Request for Production Nos. 1–3.  Enterprise did not object to Request for Production No. 2, and therefore Enterprise must fully respond to that request.  *Id.* at 5–6.

Request for Production Nos. 1 and 3 respectively seek "An electronic database (i.e., Excel file) identifying all individuals who submitted an application, either directly or indirectly, to Defendant for the position of Management Trainee for the time period January 1, 2019, to December 31, 2023 . . . ." and "All data/documents submitted by any person who applied for the

Management Trainee position throughout all of Enterprise's divisions from January 1, 2019 to December 31, 2023 . . . ." *Id.* at 4, 6.  Enterprise objects to Request for Production Nos. 1 and 3 to the extent they seek production of data concerning applicants who did not meet minimum objective screening criteria such as possession of a valid driver's license and applicants "who self-selected out of consideration," meaning that they did not report for a scheduled interview or otherwise withdrew themselves from the application process. *Id.* at 4–6.

The EEOC does not ask the Court to compel Enterprise to produce data concerning applicants who did not meet minimum objective screening criteria.  Enterprise's objection to producing data concerning applicants who did not meet minimum objective screening criteria is sustained.

Enterprise's objection to producing data concerning applicants "who self-selected out of consideration" is overruled.  It is entirely plausible that applicants who encountered age discrimination during the hiring process failed to report for an interview or otherwise withdrew themselves from the application process, and those applicants are relevant and directly at issue in this litigation.

**C.  Talent Acquisition Personnel Orientation Materials**

Under the third topic in its Motion to Compel, the EEOC seeks to compel Enterprise to fully respond to Request for Production No. 17, which asks for "All talent acquisition orientation materials from 2018 to present." *Id.* at 12.  In the briefing and during the March 15 hearing, the parties indicated that they are continuing to confer regarding this request. *See* DE 73 at 2–3; DE 74 at 2–3.  Consequently, the Court reserves ruling on Enterprise's objections to Request for Production No. 17 at this time.  The Court expects the parties to continue to confer in good faith and will discuss Request for Production No. 17 with the parties during the upcoming discovery hearing on April 10.

### D.  Complaints of Age Discrimination

Under the fourth topic in its Motion to Compel, the EEOC seeks to compel Enterprise to fully respond to Request for Production No. 42.  That request and Enterprise's response state:

> **REQUEST NO. 42:** All documents memorializing or describing any employee complaints of age discrimination and any investigation into such complaints, including but not limited to communications between the complainant and Enterprise, internal communications regarding the complaint, investigation notes and documents, documents regarding the outcome of the complaint and investigation, and all other documentation memorializing the complaint process.
>
> **RESPONSE:** Enterprise objects that this request is irrelevant, overbroad, and out of proportion to the needs of the case to the extent it relates to complaints of age discrimination unrelated to the Management Trainee program.  Enterprise further objects to the extent this request seeks documents covered by the attorney-client privilege or work product doctrine. Enterprise will produce nonprivileged documents memorializing or describing complaints of age discrimination in the Management Trainee program that are found in its possession, custody, and control following a reasonably diligent search.

DE 65-2 at 24–25.

Enterprise's objections based on relevance, overbreadth, and disproportionality are overruled.  Documentation relating to age discrimination complaints even outside of the management trainee program is relevant to proving or disproving Enterprise's affirmative defense that it "did not engage in any form of intentional or willful discrimination, nor did it act with a discriminatory purpose, but rather acted in good faith to comply with the ADEA," and the documentation is proportional to the needs of this case.  DE 43 at 7; *see* 29 U.S.C. § 626(b) (providing for liquidated damages "only in cases of willful violations" of the ADEA).

As for Enterprise's objections based on the attorney-client privilege and work product protection, responsive documents for which Enterprise claims a privilege or work product protection must be logged in a privilege log that complies with the Federal Rules of Civil Procedure and the Local Rules.  *See* Fed. R. Civ. P. 26(b)(5)(A); Southern District of Florida Local Rule 26.1(e)(2)(B).  The Court will not rule on these objections at this juncture, as the Court has not reviewed the purportedly privileged and protected documents.

### E.  Dates for Production

Under the fifth and final topic in its Motion to Compel, the EEOC requests that Enterprise complete its rolling production of documents by April 28, 2024.  As Enterprise did not propose a deadline to complete its production in the briefing, the Court questioned Enterprise on this topic during the March 15 hearing.  Enterprise was unwilling to propose any deadline to complete its production.  The Court understands that the parties intended to confer about custodians and additional discovery matters during the week of March 18, and the Court expects the parties to continue to confer in good faith.  The Court reserves ruling on a deadline for Enterprise to complete production at this time.  The Court will discuss this matter with the parties during the upcoming discovery hearing on April 10, when they will have had the benefit of additional conferral and the rulings in this Order.  The Court intends to set a deadline for Enterprise to complete its production if the parties cannot agree on the matter.

### VI.    Conclusion

Based on the foregoing, Enterprise's Motion to Compel EEOC Statistical Analysis [DE 45], Motion to Compel Conciliation-Related Documents [DE 46], and Motion to Compel Claimant Information [DE 51] are **DENIED**.  The EEOC's Motion to Compel Complete Responses to First Request for Production [DE 65] is **GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART**.  The Court will discuss the issues on which it has reserved ruling—

Enterprise's response to Request for Production No. 17 and a deadline for Enterprise to complete its production of documents—during the upcoming discovery hearing on April 10.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 21st day of March, 2024.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE

23