# EXHIBIT B

| | |
|---|---|
| **From:** | Bruhn, Alex |
| **To:** | CARTER SOX [she/her/hers]; TOUSSAINT CUMMINGS |
| **Cc:** | KRISTEN M. FOSLID; MICHELLE LINAKIS; Schwartz, Jason C.; Meeks, Katherine Moran; Bloom, Kathryn Harris; "Siegel, Steven"; "Janes, Megan" |
| **Subject:** | EEOC v. Enterprise - Discovery Deficiencies |
| **Date:** | Wednesday, May 15, 2024 6:39:00 PM |

Carter and Toussaint,

I write to raise additional deficiencies in the EEOC's responses and objections to Request Nos. 15–24 in Enterprise's Second Request for Production. Please let us know a good time over the next few days to meet and confer on the issues below.

The EEOC asserts blanket objections to producing documents regarding the EEOC Attorney Honors Program, the EEOC Pathways Recent Graduates Program, and the Presidential Management Fellows program as (1) irrelevant because the EEOC's "hiring practices are not at issue in this litigation" and (2) "overbroad, unduly burdensome, and not relevant" because Enterprise's requests are not limited to particular individuals, EEOC offices, or geographies.

The EEOC's boilerplate objections that these requests are "overbroad, unduly burdensome, and not relevant" fail to satisfy the requirement in Magistrate Judge Augustin-Birch's discovery order that such objections be "supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." Dkt. 38, at 4. The EEOC fails to provide any of the specifics necessary to support a burden claim, such as the estimated number of responsive documents, where they are stored, or the steps necessary or costs associated with collecting them. Please provide information substantiating your burden and overbreadth objections—or withdraw them.

RFP Nos. 15–20 (Hiring Data)

As the complaint makes clear and the EEOC has repeatedly represented to the Court, the statistical analysis of Enterprise's hiring data for the MT program will be central to the EEOC's pattern-or-practice claim. Given that the EEOC is charged with enforcing the ADEA, hiring data for its own entry-level programs is relevant to its claim against Enterprise. If the EEOC itself more often hires applicants under age 40 for its entry-level programs, that will demonstrate that any similar pattern in Enterprise's MT hiring (if one exists) is typical for such programs and not evidence of intentional age discrimination. Enterprise is entitled to discover information demonstrating that any statistical proof offered by the EEOC is "insignificant." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977).

RFP Nos. 21–22 (Promotional Materials and Public Statements)

The promotional materials and public statements are plainly relevant. The complaint alleges that Enterprise "markets its management training program as a place to 'start your career' and 'get incredible opportunities to grow and take on new roles' thanks to Enterprise Florida's 'promote-from-within culture.'" Compl. ¶ 11. Yet the EEOC advertises its own hiring programs to potential applicants using strikingly similar language. The webpage for the EEOC Attorney Honors Program, for example, describes it as "an exciting opportunity for qualified entry-level Attorneys and Law Clerks and a pathway to career employment at the EEOC" and "a way to start a public service career." Documents regarding the EEOC's own hiring practices are relevant to the agency's claim that Enterprise has engaged in discriminatory hiring. *See, e.g., EEOC v. Freeman*, 961 F. Supp. 2d 783, 786 (D. Md. 2013)

(citing evidence regarding EEOC's own background check practices in granting employer summary judgment on agency's background check claim).

The EEOC speculates that Request Nos. 21 and 22 could entail a "search the email of every employee to see if they made a statement to someone outside the agency," but these requests seek "promotional materials" and "public statements," not one-off emails to outside individuals. This objection therefore has no merit.

The EEOC further objects to Request No. 21 "to the extent Defendant has equal access to publicly available statements issued by EEOC on public websites, social media accounts, etc." "Courts have unambiguously stated that this exact objection"—that the documents at issue "are equally, if not more, available to Defendant"—"is insufficient to resist a discovery request." *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 3841557, at *4 (M.D. Fla. Aug. 29, 2011) (overruling objection "that the information can be as easily obtained by the Plaintiff as by the Defendant."). Enterprise should not be required to trawl for these materials on social media or other web sites when they are readily accessible to the EEOC.

RFP Nos. 23–24 (Interview Questions)

The EEOC's interview questions are likewise relevant. One of the complaint's few core factual allegations is that Enterprise's interview questions for the MT program "are geared towards younger candidates" because they seek information about applicants' college majors, work during school, extracurriculars, and college experience. *See* Compl. ¶ 15. But it appears that the EEOC considers similar information in hiring for its own entry-level programs. For example, the EEOC's website states that the agency considers "academic achievement," "relevant . . . law courses," "law journal[s]," "legal aid and legal clinic experience," and "summer and/or part-time employment" in hiring for the EEOC Attorney Honors Program. If the EEOC uses interview questions addressing these topics in its own hiring for entry-level positions, that supports Enterprise's argument that such questions are not evidence of age discrimination. *See, e.g.*, *Freeman*, 961 F. Supp. 2d at 786.

Best,
Alex

**Alex Bruhn**
Associate Attorney

T: +1 202.887.3568 | M: +1 540.550.7442
ABruhn@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, D.C. 20036-5306