```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2                        FORT LAUDERDALE DIVISION
                        CASE NO. 0:23-cv-61744-MD
 3

 4   U.S. EQUAL EMPLOYMENT OPPORTUNITY     Fort Lauderdale, Florida
     COMMISSION,
 5
                    Plaintiff,             May 2, 2024
 6
              vs.                          2:22 PM - 3:56PM
 7
     ENTERPRISE LEASING COMPANY OF FLORIDA,
 8   LLC,

 9                  Defendant.             Pages 1 to 65
     _____
10
                        HEARING ON VARIOUS MOTIONS
11                BEFORE THE HONORABLE MELISSA DAMIAN
                       UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13

14

15   FOR THE PLAINTIFF:         Carter Sox, Esquire
                                Kristen Foslid, Esquire
                                Toussaint Cummins, Esquire
16                              Equal Employment Opportunity
                                Commission
17                              100 SE 2nd Street
                                Suite 1500
18                              Miami, Florida 33131

19   FOR THE DEFENDANT:         Katherine Meeks, Esquire
                                Gibson, Dunn & Crutcher, LLP
20                              1050 Connecticut Avenue, N.W.
                                Washington, D.C. 20036
21

22

23

24

25
```

```
 1   STENOGRAPHICALLY REPORTED BY:

 2                           PATRICIA BAILEY-ENTIN, FPR, RPR
                             Official Court Reporter before:
 3                           The Honorable Melissa Damian
                             United States District Court
 4                           U.S. Federal Courthouse
                             299 East Broward Boulevard
 5                           Fort Lauderdale, Florida 33301
                             (305) 523-5635
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   2,000 pieces of evidence right there as far as documentation
 2   goes that has to be collected now, whereas we can put that part
 3   off.
 4           Because the benefit of bifurcation is if we lose at
 5   Stage 1, we don't prove a prima facie case, then there is no
 6   Stage 2.  We're not going forward anymore.  So there's nothing
 7   else to collect.  So all of that energy wasn't expended for no
 8   reason.
 9           But on the flip side, if we win -- and this is what a
10   lot of the cases say -- for example, the PNT case
11   Minneapolis -- or Minnesota, I should say, from 2015, which was
12   also an ADEA pattern or practice case.  And in that case, the
13   Court said well, essentially or what usually happens if EEOC
14   loses Phase 1, then -- I'm sorry.  If the EEOC wins Phase 1,
15   then it induces settlement.
16           So it really does not behoove the defendant -- or I
17   shouldn't speak for them, but they can also do their own cost
18   benefit analysis of "Does it make sense now to go through and
19   collect all of this evidence to proceed in Phase 2?"  Right?
20           THE COURT:  When the EEOC is the plaintiff, do you
21   create a fund if you prevail ultimately?  I guess at the
22   damages phase, if you have 400 plaintiffs, you have an expert
23   just come up with numbers?
24           MR. CUMMINGS:  Yeah.  Essentially, yeah.
25           THE COURT:  I mean, my point being even at that stage,
```

```
 1   you're not going to be marching in 400 plaintiffs to
 2   substantiate their damages.  Who do you march in at Phase 2 for
 3   your damages?
 4          MR. CUMMINGS:  Well, Your Honor, that is actually a
 5   good question.  So Ms. Foslid was counsel in the earlier case
 6   in 2015 in this district, which was EEOC v. Dardin, and that
 7   case did not proceed to Stage 2.
 8          I'm new to the EEOC.  I haven't actually seen it yet,
 9   but, I mean, my understanding is -- I think that might actually
10   be a question for Enterprise, right, because at the point where
11   we are trying to prove which one of these people is owed money,
12   we're already armed with a presumption because if in Phase 1 we
13   meet our burden, then we come in with a presumption that
14   there's already been systemic discrimination.  So each person
15   that we put up now has to be shown by the defense to not have
16   been qualified.  So I would imagine that we have to prove our
17   own class.
18          The reason I brought up Dardin was because in that
19   previous case, nobody actually took the stand.  That case did
20   settle at some point during litigation.
21          THE COURT:  So in Dardin -- that's Judge Lenard's case;
22   right?
23          MR. CUMMINGS:  Yes, Your Honor.
24          THE COURT:  The EEOC prevailed in the first phrase, and
25   then it settled for damages?  Is that what happened, or you did
```

```
 1   Phase 1.
 2           THE COURT:  Wait.  How are you doing that?  Do you want
 3   them to go to every single class member, or do you want them to
 4   pull that from their own data?
 5           MS. MEEKS:  No.  So they proposed using a third-party
 6   database to collect this information, but databases contain
 7   errors.  We think databases potentially have hearsay issues.
 8   We would like each applicant to take a picture of their
 9   driver's license, email it to the EEOC, and produce it to us.
10           THE COURT:  Is EEOC -- are you requiring that the
11   potential class members provide you with any information yet,
12   or are you just relying on information that you got from
13   Enterprise?
14           MR. CUMMINGS:  As Ms. Sox mentioned, we are actually
15   calling each person to confirm their date of birth, verbally.
16           MS. MEEKS:  So -- and another piece of evidence we're
17   looking at for Phase 1 is we would like to see applicants'
18   contemporaneous communications about their interview process.
19           I know when I have gone on job interviews, I send a
20   text or email to my mom and tell her about how it went.  So I
21   think what we're looking for if an applicant told a friend or a
22   family member, "Everybody at Enterprise was so kind and
23   welcoming," that's a relevant piece of evidence.
24           If they say, "I got very flustered because I had sauce
25   on my tie" -- if they're explaining what happened during the
```

```
 1   interview, that's relevant information at Phase 1.
 2            THE COURT:  Even if this were just a straight-up
 3   discrimination claim, I don't know how relevant it is how
 4   comfortable I felt when I walked away from the interview.  The
 5   question is:  What did the employer consider in making its
 6   decision?
 7            MS. MEEKS:  Sure.  The applicant's contemporaneous
 8   reaction to how the interview went is certainly relevant.  It's
 9   part of the analysis.  So that's the type of evidence we think
10   belongs at Phase 1.
11            THE COURT:  So you're looking at actual things that
12   actually exist?  Like you want every potential class member to
13   look through their text messages and communications from the
14   time when they were interviewed and provide that to you?
15            MS. MEEKS:  So we're looking for discovery into
16   individual communications.  You know, we're certainly willing
17   to work with the EEOC on the scope of that collection; but
18   again, the process for addressing their concerns about the
19   scope of discovery is the meet and confer process followed by
20   motion practice, if necessary, about specific document
21   requests.  It's not the draconian remedy of bifurcation.
22            THE COURT:  So I mean, you would agree with me -- we
23   all agree that Teamsters at least burden-shifting, for lack of
24   a better word, if that applies.
25            MS. MEEKS:  So we disagree that the Teamsters'
```