**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE  DIVISION**

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

   v.

                                     Case No. 0:23-CV-61744-md

ENTERPRISE LEASING
COMPANY OF FLORIDA, LLC,

        Defendant.

_____/

**<u>JOINT MOTION FOR APPROVAL OF CONSENT DECREE</u>**

Pursuant to Federal Rules of Civil Procedure (7)(b)(1) and 65(d), Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and Defendant Enterprise Leasing Company of Florida, LLC ("Enterprise") (collectively, the "Parties"), by counsel, respectfully and jointly request that this Court approve and enter the attached Consent Decree.

**I.      Factual Background**

1.      EEOC is the federal agency responsible for enforcing federal laws prohibiting employment discrimination.

2.      EEOC filed this action on September 11, 2023 alleging that Enterprise engaged in a pattern or practice of age discrimination as to a class of individuals by refusing to hire applicants age 40 and over for management trainee positions in violation of the Age Discrimination in Employment Act of 1967, as amended ("ADEA"). This action seeks relief for a group of claimants consisting of persons who applied for management trainee positions with Enterprise from January 1, 2019 to December 31, 2023, were age 40 or older at the time of application, and were not

1

hired.

3.      Enterprise denies these allegations and admits no wrongdoing or violation of the law.

4.      Following the filing of EEOC's Complaint, the Parties vigorously litigated this matter and engaged in significant discovery efforts. As part of that process, the Parties exchanged multiple rounds of written discovery, filed discovery motions, and Enterprise produced over 14,000 documents, and EEOC produced over 2,000 documents.

5.      On June 23, July 7, and July 29, 2025 the Parties attended mediation before private mediator Marlene Quintana. The Parties conducted three lengthy, arms-length mediation sessions, including significant negotiation of the monetary and injunctive terms of the Consent Decree.  There was give and take on both sides during the negotiations.

6.      After engaging in comprehensive settlement negotiations, the Parties agreed to resolve this action in the terms reflected in the executed Consent Decree signed on August 27, 2025, attached as Exhibit 1. The attached Consent Decree reflects the terms of the monetary and injunctive relief to which the Parties have agreed after contemplating the specific facts of the case.

7.      The Parties respectfully request that the Court approve the proposed Consent Decree.

## II.     Legal Analysis

### a.      The Consent Decree is not Unlawful, Unreasonable, or Inequitable

In the Eleventh Circuit, the district court must review a consent decree to ensure that it is not "unlawful, unreasonable, or inequitable." *United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998). As set forth in *United States v. City of Jackson, Miss.*, 519 F.2d 1147 (5th Cir. 1975), a consent decree "is a highly useful tool for government agencies, since it maximizes the effectiveness of limited law enforcement resources; by reaching agreement with private parties as to the specifics of substantial compliance, the government may avoid the risks as well as the costs of full scale litigation of each point." *Id.* at 1151-52. Thus, where "the government has, to its satisfaction, successfully negotiated a

comprehensive voluntary accord," *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 848-50 (5th Cir. 1975), the consent decree is entitled to a presumption of validity. *United States v. Bay Area Battery*, 895 F. Supp. 1524, 1528 (N.D. Fla. 1995). Indeed, when plaintiff is an executive branch agency responsible to enforce the statute that provides the basis for the consent decree, courts should defer to the agency's experience and expertise in handling such matters. *See id.*

As set forth in *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, No. CV 111–174, 2013 WL 164516 (S.D. Ga. Jan. 15, 2013), courts reviewing consent decrees look to whether there is "evidence that the consenting parties had anything other than an arm's length, good faith, settlement negotiation." *Id.* at *2. Courts further look to whether the consent decree is consistent with the public objectives sought to be obtained by the legislation at issue. *Id.* at *2-3; *see also United States v. Miami-Dade Cnty., Fla.*, No. No. 12–24400–CIV, 2014 WL 7534027, at *3 (S.D. Fla. Apr. 10, 2014) (looking at the "good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation," as well as whether the consent decree was consistent with the Clean Water Act). "So long as the settlement is fair, adequate, reasonable, and consistent with the goals of the applicable law, the court should approve the consent decree, even if its terms are not those the court itself might have fashioned, or considers as ideal." *United States v. Colonial Oil Indus., Inc.*, No. 4:24-CV-00069-RSB-CLR, 2024 WL 4291864, at *2 (S.D. Ga. Sept. 25, 2024) (citation omitted).

In this case, the Consent Decree is not "unlawful, unreasonable, or inequitable." The Parties vigorously litigated this matter at every juncture. The Parties exchanged written discovery, produced documents, and engaged in extensive motion practice. EEOC and Enterprise were both represented by experienced counsel and there was give and take by both Parties during the mediation process. The Parties litigated and negotiated this matter as opponents, and there is no suggestion of collusion in this litigation. *See, e.g., Fla. Wildlife Fed'n, Inc. v. Jackson*, No. 4:08cv324-RH/WCS, 2009 WL 5217062,

at *5 (N.D. Fla. Dec. 30, 2009) (approving Consent Decree where, among other factors, parties agreed to settle at arm's length, attorneys were experienced, and the "record includes not a hint of collusion.").

In addition, the Parties' Consent Decree reflects a compromise based on litigation risks. The amount of monetary relief for the Claimants was the subject of significant negotiations. The agreed monetary relief of $1,800,000 was a reasonable compromise under the circumstances and in consideration of the litigation risks on both sides. This is a compromise figure that reflects the divergent positions of the Parties on the merits of the case.

In addition, the Consent Decree is consistent with the goals of the ADEA. *See* Exhibit 1. Pursuant to the agreement, Enterprise agrees to maintain training on the ADEA (Ex. 1 at ¶¶ 32-37), policies based on the ADEA (*Id.* at ¶¶ 28-31); tracking and reporting based on the ADEA (*Id.* at ¶¶ 19, 68);  and posting of a notice regarding this lawsuit (*Id.* at ¶ 38). *See, e.g., Colonial Oil Indus., Inc.*, 2024 WL 4291864, at *3 (noting that the consent decree furthers the goals of the Clean Air Act where it implements corrective measures designed to reduce air pollution and serves the public interest by avoiding litigation). Importantly, these measures are designed to prevent age discrimination and aim to protect the public interest. Accordingly, for this additional reason, the Decree is lawful, reasonable, and equitable.

### b.  The Consent Decree Conforms to Fed. R. Civ. P. 65(d)

The Court must consider whether the Consent Decree conforms to Rule 65 of the Federal Rules of Civil Procedure. Here, the Parties' Consent Decree does conform to Rule 65 because it states the reasons for its issuance; sets forth the specific terms with which the Parties must comply; and describes in detail the acts restrained and required.

For example, the Consent Decree provides a summary of the allegations and states that the Parties signed the Decree "in the interest of resolving this matter, to avoid further cost of litigation,

and as a result of having engaged in comprehensive settlement negotiations . . . ." (Ex. 1 at ¶ 3.) The Decree also provides for monetary relief for the approximately 1,400 eligible claimants. (*Id.* ¶ 41.)

The Consent Decree further makes clear the beneficiaries of the Decree (*Id.* at ¶ 41) and provides for a three-year duration (*Id.* at ¶ 16). The Decree also identifies specific EEO policies Enterprise must adopt (to the extent it has not done so already) and maintain (*Id.* at ¶ 29). The provisions of the Decree are clear and specific in that they enjoin clearly identifiable conduct. *See Ennels v. Ala. Inns. Assocs.*, 581 F. Supp. 708, 709 (M.D. Ala. 1984) (injunction enforceable that "enjoined and restrained [defendant] from discriminating, on the basis of race, against any named plaintiff or any other black person in offering or furnishing service at Adam's in Montgomery, Alabama."). Accordingly, the Consent Decree conforms to Rule 65.

Therefore, the Parties respectfully request that the Court approve and execute the attached Consent Decree, and retain jurisdiction to enforce the terms of the Consent Decree. *See, e.g., Fla. Ass'n for Retarded Citizens, Inc. v. Bush,* 246 F.3d 1296, 1299 (11th Cir. 2001) (district court's assertion that plaintiffs should seek relief from consent decree by bringing a new lawsuit would "require the parties and the courts to waste judicial resources re-litigating issues which have been dealt with [and] it would also deny the plaintiffs the benefit of the bargain which was reached in the original consent decree and which defendants obliged themselves to provide.").

## III.   Conclusion

For the foregoing reasons, the Parties respectfully request that this Court grant this joint motion for approval of the Consent Decree, execute the attached Consent Decree, administratively close this action, retain jurisdiction to enforce the terms of the Consent Decree, and enter any further relief that the Court deems equitable and just.

Dated:  September 3, 2025

Respectfully submitted,

/s/ Carter M. Sox
Carter M. Sox
Trial Attorney
Florida Bar No. 116907
Carter.sox@eeoc.gov

Toussaint Cummings
Trial Attorney
Florida Bar No. 119877
Toussaint.cummings@eeoc.gov

Robert L. Adler
Trial Attorney
Florida Bar No. 1004597
Robert.adler@eeoc.gov

Kristen M. Foslid
Regional Attorney
Florida Bar No. 0688681
Kristen.foslid@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Phone: 786-648-5851

*Attorneys for Plaintiff U.S. EEOC*

/s/ Megan L. Janes (with permission)
Megan L. Janes
Fla. Bar No. 99009
mjanes@fisherphillips.com
Steven A. Siegel
Florida Bar No. 497274
ssiegel@fisherphillips.com
FISHER PHILLIPS LLP
201 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: 954.525.4800

-and-

Ryan C. Stewart, Florida Bar No. 1024100
Jason C. Schwartz (*pro hac vice*)
Naima L. Farrell (*pro hac vice*)
Alex Bruhn (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St., N.W.
Washington, D.C. 20036
Telephone: 202.955.8242
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
abruhn@gibsondunn.com

*Attorneys for Defendant Enterprise Leasing*
*Company of Florida, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which electronically sends notice to all counsel of record in this matter.

*/s/ Carter M. Sox*
Carter M. Sox
